**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE
2026 OCT 26 P 2: 16
U.S. DISTRICT COURT
DISTRICT OF MASS.

DR. SHIVA AYYADURAI,

Candidate for United States Senate,

*Plaintiff,*

*v.*

BELMONT NEWS FOUNDATION, INC, (d/b/a THE BELMONT VOICE); JESSE A FLOYD, Editor-in-Chief; and SARAH CAPUTO,

*Defendants.*

Civil Action No. 1:26-cv-14760-ADB

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 AND FOR AN EXPEDITED STATUS CONFERENCE

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 AND FOR AN EXPEDITED STATUS CONFERENCE**

## I. PRELIMINARY STATEMENT & PROCEDURAL POSTURE

Plaintiff Dr. Shiva Ayyadurai respectfully submits this Memorandum of Law in support of his Renewed Emergency Motion for a Preliminary Injunction under Fed. R. Civ. P. 65. Earlier today, October 26, 2026, the Court dismissed Plaintiff's original complaint without prejudice for lack of subject-matter jurisdiction, granting leave to amend. Plaintiff has timely filed his First Amended

Verified Complaint, formally pleading substantial federal causes of action under 42 U.S.C. §§ 1981, 1985(3), 1983, and 28 U.S.C. § 1331 (the Grable doctrine).

Federal jurisdiction is now incontrovertibly anchored. Section 1981 explicitly prohibits discriminatory contractual impairment by private actors, and Section 1985(3) reaches private consortia conspiring to impede federal candidate advocacy. With subject-matter jurisdiction established, this Court must address the merits: an explicit written contract was executed; an operating surplus of $213,825 exists; a six-paper syndicate in Brookline was organized for Plaintiff's opponent while Plaintiff was dangled for 49 days; and early voting is actively underway. Under Cohen v. Cowles Media Co., 501 U.S. 663 (1991), newsrooms have no First Amendment license to break binding contracts. Plaintiff proposes a narrow, ministerial remedy—or a stipulated Consent Order—to resolve this emergency immediately.

## II. STATEMENT OF FACTS

The evidentiary record before this Court establishes an unbroken sequence of bad faith, concealment, and detrimental reliance:

1. The August 26, 2026 Contract: At 8:58 AM on August 26, Defendant Floyd offered general election candidate coverage. At 11:38 AM, Plaintiff accepted and provided campaign contacts. At 11:39 AM, Defendant Floyd confirmed in writing: "Thanks much. It will be a week or a bit longer after the primary for us to get sorted." (Exhibit A). In his sworn declaration (Docket 19, ¶ 7), Defendant Floyd omitted his 11:39 AM confirmation

to conceal that an explicit operational deadline was set for mid-September (the primary occurred on September 1 ).

2. Invariable Routine Practice and Detrimental Reliance (FRE 406): Under Federal Rule of Evidence 406, Plaintiff establishes an invariable campaign routine: when dedicated media coverage was confirmed (such as WWLP in Springfield or radio in Fitchburg), Plaintiff's nightly 7:00 PM operational briefing systematically directed field organizers to cease physical leafleting in that municipality to conserve finite volunteer resources. Acting in direct reliance on Defendants' written agreement, Campaign Manager Nicholas Lupo and Field Director Barbara Herda pulled field teams out of Belmont, ceasing regular flyer distribution outside the Belmont grocery store. Plaintiff surrendered his physical ground game in his hometown of 45 years in reliance on the town paper's written word. (Exhibits B and C).

3. **The $213,825 Cash Surplus Debunks "Newsroom Poverty":** Defendants swear in Docket 19 that they lacked resources due to a "limited staff of three." Official IRS Form 990 filings (EIN: 92-3493154) show Defendant Belmont News Foundation reported $658,712 in total revenue, generated a net operating cash surplus of **$213,825**, and held **$578,967 in net assets and reserves on hand (Exhibit D)**. Pleading poverty is a complete fiction.

4. The September 24 Village Works Syndicate: Mr. Floyd did not report alone. The Belmont Voice joined a six-paper reporting syndicate (with The Waltham Times, Brookline.News,

Cambridge Day, The Lexington Observer, and Your Arlington). On September 24, reporters from all six newsrooms gathered at The Village Works in Brookline for an exclusive, hour-long interview with Republican candidate John Deaton. Floyd had the pooled staff, rented facility, cameras, and microphones, but intentionally excluded Plaintiff.

5. Pretextual Concealment: On September 26, Board Chair Sarah Caputo sent an email claiming the paper was "planning further coverage... as reporting progresses." Defendant Caputo intentionally concealed that Floyd had literally walked out of the Deaton syndicate interview 48 hours earlier.

6. The Careless October 14 Questionnaire: For seven full weeks (49 days), Defendants stalled Plaintiff while mail-in ballots landed in voters' hands. On October 14, Defendant Floyd—a journalist with 35 years of experience—sent four questions erroneously identifying Plaintiff's certified federal race for the U.S. Senate as a "state senate" race, while refusing to use Plaintiff's earned title ("Dr."). Having suffered two months of deceit, Plaintiff could no longer rely on unmonitored verbal assurances.

7. Discriminatory Tone-Policing and Duopoly Protection: Defendants filed a 26-page brief obsessing over Plaintiff's tone, branding his contract enforcement as "aggressive." Plaintiff is an immigrant born into India's oppressed Shudra caste who identifies with the working class. When corporate firms enforce contracts, it is "zealous advocacy"; when an outsider immigrant does so, Defendants label it "aggression." In the scientific UMass

Amherst poll, Plaintiff commands over 15% of the independent electorate (which comprises 65% of Massachusetts voters), backed by 80% statewide brand recognition. Defendants breached their agreement to artificially elevate an establishment opponent and suppress authentic independent candidacy.

## III. ARGUMENT

### A. Federal Subject-Matter Jurisdiction Is Firmly Anchored Under 28 U.S.C. §§ 1331 and 1343

1. 42 U.S.C. § 1981 Reaches Private Contractual Discrimination Section 1981 guarantees to all persons the equal right to make and enforce contracts free from racial and ancestral discrimination. Crucially, 42 U.S.C. § 1981(c) provides: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State authority." Unlike § 1983, Section 1981 requires zero state action; it regulates private contracts directly. Under Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987), Section 1981 protects against discrimination based on ancestry, ethnic characteristics, and caste heritage. Plaintiff alleges that Defendants subjected his binding contract to bad-faith delay, pretextual excuses, and discriminatory tone-policing ("aggressive") because Plaintiff is an immigrant of Shudra ancestry who refused to display submissive deference, while Defendants afforded full contract performance and collaborative syndicate profiling to white candidates. This states a direct federal claim under § 1981.

2. 42 U.S.C. § 1985(3) Prohibits Regional Conspiracies in Federal Elections. The Second Clause of 42 U.S.C. § 1985(3) explicitly prohibits conspiracies to prevent by force, intimidation, or threat any citizen lawfully entitled to vote from giving support or advocacy in a legal manner toward the election of any legally qualified person as a Member of Congress. Defendants formed an active syndicate across six non-profit newsrooms at The Village Works in Brookline to coordinate exclusive coverage for one candidate while imposing a concerted media blackout on Plaintiff's federal candidacy. This private conspiracy confers direct federal jurisdiction under 28 U.S.C. § 1343(a)(1) and (2).
3. Embedded Federal Question Under the Grable Doctrine Under Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005), federal jurisdiction lies over state claims that necessarily raise a substantial, disputed federal issue. Under Shea v. Bay State Gas Co., 383 Mass. 218, 222 (1981), contracts must be construed to reflect a lawful purpose. Defendant Belmont News Foundation is an IRS 501(c)(3) charity. Under 26 U.S.C. § 501(c)(3) and IRS Rev. Rul. 86-95, candidate coverage by a 501(c)(3) legally mandates strict non-partisan parity. Construing the contract term "coverage" requires determining whether federal tax law incorporates equal parity mandates into non-profit candidate agreements as a matter of federal public policy.

**B. Plaintiff Satisfies the Four-Part Preliminary Injunction Standard**

To obtain preliminary injunctive relief, a plaintiff must establish: (1) a likelihood of success on the merits; (2) potential for irreparable harm; (3) a balance of equities favoring relief; and (4) that

the public interest will not be adversely affected. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).

**1. Substantial Likelihood of Success on the Merits**

a. Cohen v. Cowles Media Co. Forecloses First Amendment Immunity: Defendants rely on Miami Herald v. Tornillo, 418 U.S. 241 (1974). Tornillo struck down a state statute imposing a blanket, forced right-of-reply on private newspapers absent any underlying consensual agreement. This action is governed by Cohen v. Cowles Media Co., 501 U.S. 663 (1991), where the Supreme Court squarely held that "the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law." Id. at 672. When a publisher voluntarily enters into an agreement that induces detrimental reliance, generally applicable doctrines of contract law apply to the press just as they apply to any other enterprise.

b. Enforceable Contract and Verifiable Detrimental Reliance: The August 26 email exchange constitutes an offer, acceptance, and operational confirmation. Furthermore, under Massachusetts promissory estoppel, a promise is binding when the promisor should reasonably expect to induce action or forbearance of a substantial character, and does induce it. Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760–61 (1978). Under Federal Rule of Evidence 406, Plaintiff has submitted sworn declarations from Campaign Manager Nicholas Lupo and Field Director Barbara Herda establishing that Plaintiff reasonably and foreseeably surrendered active physical field leafleting in Belmont in detrimental reliance on Defendants' explicit promise (Exhibits B, C).

c. Bad-Faith Pretext Under Anthony's Pier Four: Under Massachusetts law, every contract contains an implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471–72 (1991). A party breaches this covenant when it uses pretext, concealment, or manufactured delay to destroy or injure the right of the other party to receive the fruits of the contract. Defendants actively concealed their September 24 consortium interview with Republican opponent John Deaton (Exhibit E), dangled Plaintiff's campaign with vague assurances on September 26, stalled for seven weeks (49 days) during active voting, and then deployed bad-faith tone-policing to evade performance.

**2. Irreparable Harm During Active Voting**

In an election context, interference with political advocacy and the deprivation of equal candidate access inflicts immediate and irreparable harm. Elrod v. Burns, 427 U.S. 347, 373 (1976). Mail-in voting is actively occurring daily in Belmont. Once a voter marks and returns a ballot without knowledge of Plaintiff's ballot-certified federal candidacy, that injury cannot be undone or remedied by post-election money damages.

**3. The Balance of Equities Overwhelmingly Favors Ministerial Relief**

The balance of hardships tips decisively in Plaintiff's favor. If relief is denied, Plaintiff suffers permanent electoral prejudice in his hometown. Conversely, the requested relief imposes zero editorial burden on Defendants: it simply requires publishing Plaintiff's

written answers to the exact four questions formulated and transmitted by Defendant Floyd on October 14, 2026 (Exhibit F).

**4. The Public Interest Strongly Favors Non-Partisan Parity**

The public interest is served when non-profit 501(c)(3) civic institutions adhere to their statutory mandates of non-partisanship (IRS Rev. Rul. 86-95) and honor binding agreements that ensure voters receive a complete presentation of ballot-qualified candidates.

## IV. THE NARROW MINISTERIAL REMEDY AND CONSENT ORDER MECHANISM

To ensure compliance without ongoing judicial entanglement, Plaintiff stands ready to stipulate to a formal Consent Order entered on the docket. If Defendants agree today to publish Plaintiff's written responses to Defendant Floyd's four questions no later than Wednesday, October 28, 2026, at 5:00 PM, Plaintiff will consent to the Court retaining jurisdiction through Election Day solely to confirm compliance, accompanied by a contingent Rule 41 dismissal upon publication.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Renewed Emergency Motion, schedule an expedited status conference, and enter the requested Temporary Restraining Order, Preliminary Injunction, or stipulated Consent Order.

DATED: October 26, 2026

RESPECTFULLY SUBMITTED,

/s/ Dr. Shiva Ayyadurai

Dr. Shiva Ayyadurai, Plaintiff Pro Se

701 Concord Avenue

Cambridge, MA 02138

Phone: 857-393-7910

Email: vashiva@cytosolve.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, a true and correct copy of the foregoing Memorandum of Law in Support of Renewed Emergency Motion for Preliminary Injunction and Consent Order was served via electronic mail upon counsel of record for Defendants:

Rachel Strom, Esq.

Davis Wright Tremaine LLP

Email: rachelstrom@dwt.com

Counsel for Defendants

Executed this 26th day of October, 2026.

/s/ Dr. Shiva Ayyadurai

Dr. Shiva Ayyadurai, Plaintiff Pro Se

701 Concord Avenue

Cambridge, MA 02138

Phone: 857-393-7910

Email: vashiva@cytosolve.com