**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>Plaintiff,<br><br>v.<br><br>BELMONT NEWS FOUNDATION, INC. (d/b/a THE BELMONT VOICE); JESSE A FLOYD, Editor-in-Chief; and SARAH CAPUTO,<br><br>Defendants. | Case No. 1:26-cv-14760-ADB |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

DAVIS WRIGHT TREMAINE LLP
Rachel F. Strom
Abigail B. Everdell (*Pro hac vice forthcoming)*
Leena M. Charlton (*Pro hac vice forthcoming)*
Celyra I. Myers (*Pro hac vice forthcoming)*
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 603-6455
Fax: (212) 489-8340
RachelStrom@dwt.com
AbigailEverdell@dwt.com
LeenaCharlton@dwt.com
CelyraMyers@dwt.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

A. The Parties .......... 2

B. Plaintiff Demands Coverage From *The Belmont Voice* .......... 2

C. This Lawsuit .......... 5

ARGUMENT .......... 6

I. PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF .......... 6

A. Plaintiff Fails to State a Claim for Breach of Contract or Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Counts V and VII) .......... 6

B. Plaintiff Fails to State a Claim for Promissory Estoppel (Count VI) .......... 8

C. Plaintiff Fails to State a Claim for Unfair and Deceptive Trade Practices Pursuant to M.G.L. c. 93A (Count VIII) .......... 10

D. Plaintiff Fails to State a Claim under 42 U.S.C. § 1981 (Count I) .......... 11

E. Plaintiff Fails to State a Claim under 42 U.S.C. § 1985(3) (Count II) .......... 13

F. Plaintiff Fails to State a Claim Under Section 1983 (Count III) .......... 15

G. 28 U.S.C. § 1331 Does Not Provide Plaintiff with a Cause of Action (Count IV) .......... 16

II. THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS .......... 17

III. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION TO DISMISS THE ENTIRE ACTION WITH PREJUDICE .......... 18

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6, 13

*Ayyadurai v. Belmont News Found., Inc.*,
No. 1:26-cv-14760-ADB, Dkt. 29 (D. Mass. Oct. 28, 2026)....1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Biro v. Condé Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013)....19

*Bourgault v. Halben*,
2026 WL 1410725 (Mass. App. Ct. May 20, 2026)....8

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993)....14

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*,
531 U.S. 288 (2001)....16

*Brunette v. Humane Soc'y of Ventura Cnty.*,
294 F.3d 1205 (9th Cir. 2002)....15

*Chiodini v. Target Mktg. Grp., Inc.*,
58 Mass. App. Ct. 376 (2003)....11

*Cohen v. Cowles Media Co.*,
501 U.S. 663 (1991)....9

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020)....12

*Cruz-Arce v. Mgmt. Admin. Servs. Corp.*,
19 F.4th 538 (1st Cir. 2021)....15

*Desjardins v. Willard*,
777 F.3d 43 (1st Cir. 2015)....18

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006)....12

*Fulani v. Brady*,
935 F.2d 1324 (D.C. Cir. 1991) ........17

*Gerli v. G.K. Hall & Co.*,
851 F.2d 452 (1st Cir. 1988) ........11

*Gonzalez-Maldonado v. MMM Healthcare, Inc.*,
693 F.3d 244 (1st Cir. 2012) ........16

*Guo v. Wang*,
2024 WL 2274610 (D. Mass. May 20, 2024) ........6

*Hammond v. Kmart Corp.*,
733 F.3d 360 (1st Cir. 2013) ........12

*In re Daniel*,
568 B.R. 162 (Bankr. D. Mass. 2017) ........10

*Kuzmeskus* v. *Pickup Motor Co.*,
330 Mass. 490 (1953) ........7

*LJA Corp. v. Farace*,
1995 WL 808668 (Mass. Super. Mar. 14, 1995) ........11

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019) ........16

*Menzone v. Menzone*,
2003 Mass. App. Div. 161 (2003) ........7

*Miami Herald Pub. Co. v. Tornillo*,
418 U.S. 241 (1974) ........2, 18

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) ........19

*Ocasio-Hernández v. Fortuño-Burset*,
640 F.3d 1 (1st Cir. 2011) ........6

*Parker v. Landry*,
935 F.3d 9 (1st Cir. 2019) ........14, 15

*Perez-Sanchez v. Pub. Bldg. Auth.*,
531 F.3d 104 (1st Cir. 2008) ........14

*PMP Assocs., Inc. v. Globe Newspaper Co.*,
366 Mass. 593 (1975) ........10, 11

*R.I. Hosp. Tr. Nat'l Bank v. Varadian*,
419 Mass. 841 (1995) ....................9

*Reyes v. Municipality of Guaynabo*,
59 F. Supp. 2d 305 (D.P.R. 1999)....................14

*Rivera v. Costco Wholesale Corp.*,
2026 WL 1180480 (D.P.R. Jan. 29, 2026)....................12

*Schiff v. IRS*,
2026 WL 699650 (D.P.R. Mar. 12, 2026) ....................15

*Sheinkopf v. Stone*,
927 F.2d 1259 (1st Cir. 1991)....................3

*Stand With Us Ctr. for Legal Just. v. Mass. Inst. of Tech.*,
158 F.4th 1 (1st Cir. 2025), *pet. for cert. filed* (U.S. June 22, 2026)....................13

*TechTarget, Inc. v. Spark Design, LLC*,
746 F. Supp. 2d 353 (D. Mass. 2010) ....................9

*Unum Grp. v. Benefit P'ship, Inc.*,
938 F. Supp. 2d 177 (D. Mass. 2013) ....................7

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993)....................6

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024)....................8

*White v. Bos. Phoenix, Inc.*,
1993 WL 818707 (Mass. Super. Nov. 23, 1993) ....................11

**Statutes**

26 U.S.C. § 501(c)(3)....................2, 17

28 U.S.C. § 1331....................5, 17

28 U.S.C. §§ 1367 *et seq*....................18

42 U.S.C. § 1981.................... *passim*

42 U.S.C. § 1983....................5, 15, 16, 18

42 U.S.C. § 1985(3) ....................5, 13, 14, 15

M.G.L. c. 12, § 11I/H....................5

M.G.L. c. 93A *et seq*......5, 10, 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......1, 19

Local Rule 7.1(a)(2)......6

Defendants Belmont News Foundation, Inc., publisher of *The Belmont Voice* (or "*The Voice*"), Jesse A. Floyd, and Sarah Caputo (together, "Defendants"), by and through their undersigned attorneys, submit this memorandum of law in support of their motion to dismiss the First Amended Complaint (Dkt. 21) ("FAC") of Plaintiff Dr. Shiva Ayyadurai ("Plaintiff") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

Plaintiff's entire FAC rests on the absurd premise that *The Belmont Voice* violated his rights by declining to publish coverage of his Senate campaign on his preferred timing and terms. In service of this theory, Plaintiff attempts to elevate a simple email expressing *The Belmont Voice*'s intention to cover third-party candidates at a later date into a binding agreement or promise. It was not. He then claims that Defendants' decisions were animated by discriminatory animus. This is also utterly implausible. While Plaintiff attempts to obscure the fatal deficiencies of his claims by cloaking them in the language of social justice and racial discrimination, this cannot substitute for a well-pleaded claim. Indeed, as this Court has already signaled in denying Plaintiff's most recent motion for a temporary restraining order and preliminary injunction, *every single one* of Plaintiff's claims fails as a matter of law. *Ayyadurai v. Belmont News Found., Inc.*, No. 1:26-cv-14760-ADB, Dkt. 29 ("PI Order") at 14 (D. Mass. Oct. 28, 2026) (Plaintiff "has not shown a likelihood of success on the merits of any of his claims").

*First*, Plaintiff's state law claims are premised largely on a single email stating *The Belmont Voice*'s intention to publish coverage of third-party Senate candidates ahead of the general election. This was not a contract, a binding promise, or an unfair business practice. And even if it were, the FAC and its exhibits show that *The Belmont Voice* held up its end by seeking an interview from Plaintiff, which he ignored in favor of filing this suit. *Second*, Plaintiff's federal civil rights claims fare no better: Among other deficiencies, none of *The Belmont Voice*'s alleged actions

suggest discriminatory animus, the "conspiracy" to deprive him of his rights he alleges is nothing more than a pooled candidate interview, and *The Belmont Voice* is not a state actor. *Third*, Plaintiff has no standing to sue over *The Belmont Voice*'s compliance with 26 U.S.C. § 501(c)(3) and, even if he did, he has not alleged a violation of that statute's requirements. *Finally*, Plaintiff's claims are barred by the First Amendment, as the Supreme Court has long recognized that "[t]he choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment…[,]" and "governmental regulation of this crucial process [cannot] be exercised consistent with First Amendment guarantees of a free press." *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974). In short, Plaintiff's claims lack the factual basis to support any theory of liability, and the theories he does advance violate the First Amendment. His claims should be dismissed in their entirety, with prejudice.

## STATEMENT OF FACTS

### A. The Parties

Defendant Belmont News Foundation, Inc. is a Massachusetts nonprofit corporation that publishes the local newspaper and digital outlet[1] *The Belmont Voice*. FAC ¶ 4. Defendant Jesse A. Floyd is the paper's Editor-in-Chief, and Defendant Sarah Caputo is its Board Chair. *Id.* ¶¶ 5-6.

Plaintiff Dr. Shiva Ayyadurai is a Belmont resident and was an Independent candidate for Massachusetts United States Senate in the 2026 midterm elections. FAC ¶ 3.

### B. Plaintiff Demands Coverage From *The Belmont Voice*

On August 26, 2026, in response to an inquiry by Plaintiff about *The Belmont Voice* interviewing him, Mr. Floyd emailed Plaintiff, explaining: "Tuesday is a primary election, and our

[1] https://belmontvoice.org/ (last visited Nov. 9, 2026).

coverage was focused on candidates facing primary challenges. When we get to the general election, our coverage will expand to include other candidates." FAC Ex. A. Plaintiff replied "Sounds good," and directed Mr. Floyd to his campaign manager and communications director "to setup [an] interview." *Id.* Mr. Floyd responded: "Thanks much. It will be a week or a bit longer after the primary for us to get sorted." *Id*. That is the entirety of the exchange on which Plaintiff's contract and promissory estoppel claims rest. *See id.* ¶¶ 51-62.

On Friday, September 25, 2026, several weeks after primary elections, *The Belmont Voice* published an article about Republican Senate candidate John Deaton. FAC ¶ 21. At approximately 8:30 that night, Plaintiff emailed Mr. Floyd noting the Deaton article and asking "when we should schedule the interview." Dkt. 1, Fig. 2A.[2] Less than two hours later, before receiving any response, Plaintiff sent a second email to Mr. Floyd, Ms. Caputo, and others, *id.* Fig. 2B, asserting that the timing of *The Belmont Voice*'s coverage "can only mean you have no intent in doing any interview," suggesting that the delay was racially motivated, and demanding that *The Belmont Voice* confirm "by 5:00 PM EST tomorrow" a specific date and time for an interview "that must take place within the next 5 business days." *Id.* If *The Belmont Voice* did not comply, Plaintiff warned, he would file an "emergency complaint for Injunctive Relief," submit a complaint to the IRS, and release the email chain to regional news outlets and community networks. *Id.*

The next day, Saturday, September 26, Ms. Caputo responded: "Our editorial team is planning further coverage of this race and does plan to include your campaign in that coverage. They'll be in touch as their reporting progresses." FAC ¶ 24; Dkt. 1, Fig. 3A.

[2] Plaintiff's Amended Complaint omits some of the correspondence with Defendants included in his Verified Complaint. But, as the Court previously held, the latter's "admissions and exhibits therein still retain evidentiary significance" as "admission[s] against interest." PI Order at n.2. *See also Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991) (a verified complaint may be treated as "the functional equivalent of an affidavit.").

On Monday, September 28, Plaintiff sent Ms. Caputo, Mr. Floyd, and others an email with the subject line "Racist 'Belmont Voice' Must Be Punished for Violating Multiple Federal Laws." Dkt. 1, Fig. 3B. The email called Defendants "racist scumbags," declared that "[y]ou have broken the Law and you must be punished," threatened federal litigation and IRS proceedings to "revoke your non-profit tax-exempt status," warned that Plaintiff's "global movement of over 3 million followers" would be "made fully aware" of Defendants' supposed racism, and closed with an expletive directed at Defendants and *The Belmont Voice*. *Id.*

Notwithstanding these concerning emails, Defendants followed through on their plan to cover third-party candidates. On October 14, 2026, Mr. Floyd emailed Plaintiff that *The Belmont Voice* was "working on a piece about independent candidates on the Nov. 3 ballot" and posed four questions about Plaintiff's motivation for running, his choice of race, his definition of a successful campaign, and voters' reactions to his campaign. FAC ¶ 26 & Ex. F. Mr. Floyd asked that the answers be "as concise and direct as possible," noted that *The Belmont Voice* "reserve[d] the right to edit for clarity and length," and requested responses by Friday, October 16. *Id.* Ex. F. One of the questions referred to Plaintiff selecting "the state senate as [his] target." *Id.* ¶ 26 & Ex. F.

In response, Plaintiff alleges that the October 14 email constituted a "bad-faith pre-litigation pretext" (FAC ¶ 24; Dkt. 1, Fig. 4), and Mr. Floyd's use of "Mr. Ayyadurai" rather than "Dr. Ayyadurai" reflected "racial gatekeeping." FAC ¶ 26.[3] On October 19, Plaintiff sent Defendants a "pre-litigation notice" declaring that "a standard late Q&A or perfunctory write-up at this stage is legally insufficient," and demanding that Defendants agree by 5:00 p.m. that same day to (1) publish an "expansive, unedited feature profile" of Plaintiff; (2) publish a "top-of-page front-page notice" acknowledging his candidacy and "addressing the failure to provide concurrent

[3] In fact, because Plaintiff is not a medical doctor, using the title "Mr." reflected AP Style. *See* https://x.com/APStylebook/status/879776039848693760.

non-partisan coverage"; (3) send a "dedicated email broadcast" featuring Plaintiff's "unedited platform" to *The Belmont Voice*'s full subscriber list; and (4) pin the profile and a campaign video to the top of *The Belmont Voice*'s homepage through Election Day. Dkt. 1, Fig. 5. Plaintiff also stated that he had filed a complaint about Defendants with the Internal Revenue Service. *Id.*

**C. This Lawsuit**

On October 21, Plaintiff, proceeding *pro se*, filed a Verified Complaint asserting breach of contract, promissory estoppel, and claims under M.G.L. c. 12, § 11H/I and M.G.L. c. 93A. *See generally* Dkt. 1. Plaintiff also moved for a TRO and preliminary injunction, seeking the same relief he demanded on October 19. *See generally* Dkt. 6. On October 26, 2026, the Court dismissed the action without prejudice for lack of subject matter jurisdiction. Dkt. 25. Hours later, Plaintiff filed the First Amended Complaint, asserting additional claims under 42 U.S.C. §§ 1981, 1983, and 1985(3) and federal question jurisdiction under 28 U.S.C. § 1331 (FAC ¶¶ 32-50), and filed a renewed motion for a TRO. Dkt. 22.

On October 28, 2026, the Court denied Plaintiff's renewed motion, holding that Plaintiff "has not shown a likelihood of success on the merits of any of his claims." PI Order at 14. The Court reasoned, among other things, that "there was no agreement between the parties on any material terms relating to media coverage of Ayyadurai's claim" (*id.* at 13), that Defendants' complained-of conduct was "plainly that of private actors" and thus beyond the reach of Section 1983 (*id.* at 11), that it "cannot infer" racial animus to find a violation of Section 1981 (*id.* at 9), and that Plaintiff's Sections 1983 and 1985 and Massachusetts Chapter 93A claims were "barred by the First Amendment" under *Tornillo* (*id.* at 10-11, 14).

Following the Court's decision, counsel for Defendants emailed Plaintiff on October 30, 2026, pursuant to Local Rule 7.1(a)(2), indicating Defendants' intention to file this motion and asking if Plaintiff would voluntarily dismiss the FAC or otherwise schedule a time to confer.

Defendants' counsel followed up on November 4 and 11, 2026. Plaintiff has not responded. *See* Local Rule 7.1(a)(2) Certification, *infra*.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, a court separates the complaint's factual allegations, which are accepted as true, from its legal conclusions, which are not, and then determines whether the well-pleaded facts plausibly state a claim. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The Court may also consider documents attached to or incorporated in the complaint, including the email correspondence on which Plaintiff's claims rest. *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). Although *pro se* complaints are entitled to a liberal reading of the allegations at issue, a *pro se* plaintiff "must still comply with the applicable procedural and substantive rules of law." *Guo v. Wang*, 2024 WL 2274610, at *1 (D. Mass. May 20, 2024).

## I. PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF

None of Plaintiff's claims survives, especially when measured against Defendants' own First Amendment rights, because he fails to plausibly allege their elements.

### A. Plaintiff Fails to State a Claim for Breach of Contract or Breach of the Implied Covenant of Good Faith and Fair Dealing(Counts V and VII)

Plaintiff's breach of contract and associated good faith and fair dealing claims fail because he has not alleged the existence of a contract. A breach of contract claim requires "(1) the existence of an agreement supported by consideration; (2) that [Plaintiff] performed its obligations under the agreement; (3) that the defendant breached the agreement; and (4) that [Plaintiff] suffered injury

as a result." *Unum Grp. v. Benefit P'ship, Inc.*, 938 F. Supp. 2d 177, 185 (D. Mass. 2013) (citing *Singarella v. City of Bos.*, 342 Mass. 385, 387 (1961)). He has not pled these elements.

*First*, as this Court previously held, there was no contract. *See* PI Order at 8. Plaintiff alleges that Defendants "made a clear, written offer of general election coverage." FAC ¶ 52. But the referenced email exchange only explained that "[w]hen we get to the general election, our coverage will expand to include other candidates." FAC Ex. A. This was at most a statement of general intention. And "[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract." *Kuzmeskus* v. *Pickup Motor Co.*, 330 Mass. 490, 493 (1953). As this Court has already found, "[n]o reasonable person would construe this general and broadly worded statement—contained in a casual email responding to a question about the newspaper's coverage—as a contractual offering with 'definite and certain' terms," nor "infer from it a 'present intention to be bound.'" PI Order at 8; *see also id.* at 12. Defendants made no additional commitments, responding only that it should take "a week or a bit longer after the primary for us to get sorted." *See* FAC Ex. A. There was not then, and has never been, any discussion of a specific interview with Plaintiff or the terms of such an interview, a specific publication timeline, questions, point of view, or "equal coverage." *Id.* Furthermore, even if these vague communications are sufficient to establish a firm offer, Plaintiff did not provide any consideration whatsoever to turn that offer into a legally binding contract. *Menzone v. Menzone*, 2003 Mass. App. Div. 161, 162 (2003) ("A hope of a benefit is not valid consideration"). Providing his campaign manager's contact information and threatening to sue are not consideration on Plaintiff's part sufficient to convert a statement of general intention into a contract.

*Second*, even if there were a contract, there was no breach. Plaintiff claims Defendants breached the supposed contract by "failing and refusing to provide candidate coverage, excluding

Plaintiff from candidate interviews, and attempting to run out the election clock." FAC ¶ 53. But no interview promise was ever made. And despite Plaintiff's insults and invective, *see* Dkt. 1, Fig. 3B ("F[***] you and the Belmont Voice"), Defendants *still* attempted to interview him on October 14, 2026. *See* FAC Ex. F. He chose not to respond by the paper's deadline (or later), thereby depriving *himself* of the opportunity to have *The Belmont Voice* report on his campaign. Any damages he suffered as a result are not Defendants' responsibility. *See Bourgault v. Halben*, 2026 WL 1410725, at *5 (Mass. App. Ct. May 20, 2026) ("Damages not directly traceable to the violation of the contract or which result from other causes are not allowed") (citation omitted).

*Finally*, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, FAC ¶¶ 60-62, fails as such a claim must be based on a contract and "does not give rise to an independent cause of action." *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (citing *Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp.*, 2002 WL 1340853, at *9 (Mass. Super. Ct. June 13, 2002), *aff'd*, 60 Mass. App. Ct. 1106 (2003)); PI Order at 12 n.7 (finding implied covenant claim unlikely to succeed because "if no contract exists, 'there can be no derivative implied covenant of good faith and fair dealing' claim") (citation omitted).

Because Plaintiff has not established the existence of a valid contract, his breach of contract and breach of the implied covenant of good faith and fair dealing should be dismissed.

**B. Plaintiff Fails to State a Claim for Promissory Estoppel (Count VI)**

Plaintiff fails to plead promissory estoppel for the same reason he fails to plead breach of contract: There was no enforceable promise. "Under Massachusetts law, the elements of promissory estoppel are '(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.'" *TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 357 (D. Mass. 2010) (citing *Bongaards v. Millen*, 440

Mass. 10, 15 (2003)). To qualify, a promise must be "unambiguous" and cannot be only "expressive of a present intention." *R.I. Hosp. Tr. Nat'l Bank v. Varadian*, 419 Mass. 841, 849-50 (1995) (citation omitted). And, except for consideration, all other elements of a contract must be satisfied. *Id.* Plaintiff does not plead this claim.

*First*, as noted above and confirmed in the Court's PI Order, there was no promise to provide coverage of Plaintiff at all, much less on his timeline and terms. PI Order at 13. At most, *The Belmont Voice* expressed a general intent to cover Plaintiff's campaign, which is not enforceable as a matter of law. *See R.I. Hosp,* 419 Mass. at 850. Moreover, even if a promise had been made to interview Plaintiff, Defendants ultimately followed through on this. As this Court explained, "even if Defendants' words could somehow be construed as a definite promise of coverage, the record indicates that Defendants were fully prepared to offer such coverage, and that it was [Plaintiff] who rejected their offer because it did not conform with his desired timeline and scope." PI Order at 13. These circumstances clearly distinguish this case from *Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991), which Plaintiff cites in support of his contract claims. *See* FAC ¶ 54. In that case—unlike in this one—there was no question that a clear and specific promise had been made. *Id.*; *Cohen*, 501 U.S. at 665 ("Cohen made clear to the reporters that he would provide the information only if he was given a promise of confidentiality. Reporters from both papers promised to keep Cohen's identity anonymous and Cohen turned over copies of two public court records..."). Here, by contrast, there was no promise.

*Second*, Plaintiff pleads no detriment caused to him in *reasonable* reliance on Defendants' supposed promise. Plaintiff alleges that his campaign "halted active street leafletting outside the local Belmont grocery store" in reliance on *The Belmont Voice*'s purported promise, FAC ¶ 18, but the *Voice* could not have anticipated that Plaintiff, a United States Senate candidate, would

change his approach to campaigning because a hyperlocal paper planned to interview him at some point. And if Plaintiff did actually rely in this manner, it would have been unreasonable as a matter of law.

In short, Plaintiff's allegations simply do not state a claim for promissory estoppel.

### C. Plaintiff Fails to State a Claim for Unfair and Deceptive Trade Practices Pursuant to M.G.L. c. 93A (Count VIII)

Liability under MGL Chapter 93A requires conduct that "(1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers or other business persons." *In re Daniel*, 568 B.R. 162, 175 (Bankr. D. Mass. 2017). Because Plaintiff has not plausibly alleged the essential elements of this claim, it must be dismissed.

*First*, *The Belmont Voice*'s exercise of editorial discretion in deciding when and how to publish coverage of the midterm elections and participating in joint interviews with other local newspapers, *see* FAC ¶¶ 20-24, does not amount to engaging in actionably deceptive conduct. As Massachusetts courts have previously acknowledged, "the publication and sale of newspapers is a private enterprise as distinguished from a business affected with public interest and ... those engaged in such a business are free to deal with whomever they choose." *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 594 (1975). "[A] refusal to deal, without a showing of monopolistic purpose or concerted effort to hinder free trade, is not an unfair trade practice under G.L. c. 93A." *Id.* at 599 (regarding newspaper's decision not to run certain ads); *see also White v. Bos. Phoenix, Inc.*, 1993 WL 818707, at *3 (Mass. Super. Nov. 23, 1993); *Chiodini v. Target Mktg. Grp., Inc.*, 58 Mass. App. Ct. 376, 378 (2003) ("It is generally recognized that in the absence of any purpose to create or maintain a monopoly, a newspaper, … is free to deal with whomever it chooses."). Applying these cases, this Court concluded that "claims like [Plaintiff's] appear barred

by Massachusetts precedent." PI Order at 14. There is no allegation, nor could there be, that *The Belmont Voice* acted to restrain trade, and Plaintiff's Chapter 93A claim therefore fails.

*Second*, Plaintiff identifies no "immoral, unethical, oppressive, or unscrupulous" conduct, as required for this claim, especially as Defendants *did* attempt to interview Plaintiff. "Every deal that goes sour does not give rise to a G.L.c. 93A claim," *LJA Corp. v. Farace*, 1995 WL 808668, at *5 (Mass. Super. Mar. 14, 1995) (citing *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 502 (1979), citing *PMP Associates, Inc.*, 366 Mass. at 596), and a "mere breach of contract is insufficient to establish Ch. 93A liability." *Gerli v. G.K. Hall & Co.*, 851 F.2d 452, 454 (1st Cir. 1988). Plaintiff has not even alleged breach of contract, much less the level of wrongful conduct required to plead a claim under Chapter 93A.

*Finally*, Chapter 93A §9(3) requires specific notice of a deceptive trade practices claim under that statute 30 days before filing an action. M.G.L. c. 93A, § 9(3). Plaintiff did not make a written demand that identified any deceptive trade practices.

For these reasons, Plaintiff has not stated a claim for unfair and deceptive trade practices.

**D. Plaintiff Fails to State a Claim under 42 U.S.C. § 1981 (Count I)**

To state a claim under 42 U.S.C. § 1981(a), Plaintiff must plausibly allege that (1) he is a member of a racial minority; (2) Defendants intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, such as the making and enforcing of contracts. *See Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013). Plaintiff must also identify an existing or prospective "contractual relationship" under which he "[has] rights," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006), and ultimately prove that race was a but-for cause of his injury, *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). Plaintiff cannot satisfy these requirements.

*First*, the Section 1981 claim fails at the threshold because, as this Court previously held, Plaintiff "fails to identify an impaired contractual relationship under which he has rights" and because nothing suggests *The Belmont Voice*'s coverage "would have involved a contractual relationship." PI Order at 7-8 & n.5 (internal citations omitted); *supra* Section I.A. Without an underlying contractual relationship, there is nothing for Section 1981 to protect. *Domino's Pizza*, 546 U.S. at 476, 479-80 (finding no claim under Section 1981 where plaintiff failed to allege a contract under which he had rights).

*Second*, Plaintiff does not plead any facts tending to show that racial animus was the but-for cause of Defendants' alleged breach. Indeed, the only "evidence" of animus Plaintiff identifies is that Defendants' litigation papers described his emails as "aggressive" and "concerning" (FAC ¶¶ 28-29, 36), that *The Belmont Voice*'s editor addressed him as "Mr." and mistakenly referred to a "state senate" race (*id.* ¶ 26), and that a financial backer of the paper is a neighbor with whom Plaintiff has a long-running political dispute (*id.* ¶ 30).[4] None of this suggests *racial* motivation, and Plaintiff cannot plausibly plead otherwise by sheer insistence. *Rivera v. Costco Wholesale Corp.*, 2026 WL 1180480, at *11-12 (D.P.R. Jan. 29, 2026) (collecting cases dismissing Section 1981 claims absent competent evidence of racial animus).

Indeed, this Court has already determined that these facts, "alone or in combination," do not "plausibly suggest that Defendants would have provided [Plaintiff] the coverage he seeks if he were a different race." PI Order at 9. Accurate descriptions of Plaintiff's expletive-laden accusations and legal threats, made in a court filing *after* Plaintiff sued, are not evidence of a racial motive. *See* Dkt. 1, Fig. 3B; PI Order at 9 (finding "Defendants' characterization of the emails as 'aggressive' to be entirely accurate, such that the Court cannot infer racial animus from it"). And

[4] While not necessary to resolve this motion, the neighbor identified in Plaintiff's FAC was not involved in "incubat[ing]" or "found[ing]" *The Belmont Voice* and has no role in its governance. *See id.*

a political feud, by Plaintiff's own account, reflects "political animus," FAC ¶ 30, not racial animus. Even if Plaintiff had plausibly alleged a racial motivation, his own allegations supply an "obvious alternative explanation," *Iqbal*, 556 U.S. at 682, for the timing of the coverage: *The Belmont Voice* told Plaintiff its coverage was first "focused on candidates facing primary challenges" and would later "expand to include other candidates," FAC Ex. A, then covered the Republican nominee, *id.* ¶ 21, and then invited Plaintiff to participate in a piece on Independent candidates, *id.* ¶ 26 & Ex. F. That is a newsroom sequencing its election coverage, not racial discrimination. Plaintiff's Section 1981 claim fails as a matter of law.

### E. Plaintiff Fails to State a Claim under 42 U.S.C. § 1985(3) (Count II)

Plaintiff's Section 1985 claim similarly fails on multiple fronts. "[T]o state a claim under § 1985(3), a plaintiff must plausibly allege: (1) a conspiracy, (2) a conspiratorial purpose to deprive a class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Stand With Us Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 24 (1st Cir. 2025) (citation omitted), *pet. for cert. filed* (No. 25-1404) (U.S. June 22, 2026). "Furthermore, a plaintiff may recover only when the conspiratorial conduct of which he complains is propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* And because Plaintiff relies on the statute's federal-election clause, he must also allege a conspiracy to prevent support or advocacy "by force, intimidation, or threat." 42 U.S.C. § 1985(3). He has not, and cannot, satisfy these requirements.

*First*, and as with his § 1981 claim, Plaintiff has failed to plead class-based animus. As this Court previously noted, this "dooms [his] § 1985 claim." PI Order at 10. The count itself asserts only that Defendants sought to "promote Republican candidate John Deaton" and "bolster the

establishment duopoly," FAC ¶¶ 31, 41—that is, it alleges partisan or political motivation, not racial animus. The Supreme Court has refused to extend Section 1985(3) beyond invidious class-based discrimination, *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993), and an alleged preference for one candidate's campaign over another's does not qualify. *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 109 (1st Cir. 2008) ("[Section] 1985(3) provides no remedy for animus on the basis of political beliefs."); *Reyes v. Municipality of Guaynabo*, 59 F. Supp. 2d 305, 310 (D.P.R. 1999) ("Being a member of a political party does not constitute a protected class envisioned by Congress when it created Section 1985(3)").

*Second*, as to conspiracy, Plaintiff "offers no evidence to support his claim that [] a conspiracy ever existed, much less that 'the purpose of the conspiracy was to deprive the plaintiff of the equal protection of the laws.'" PI Order at 9 (internal citations omitted). Plaintiff's theory is that Mr. Floyd attended a joint interview of Republican nominee John Deaton with five other local nonprofit newsrooms—a means of making the interview worth the candidate's time due to the combined circulation of the local outlets—and that this "pooled" interview was a "coordinated blackout" of Plaintiff. FAC ¶¶ 20-22, 41-42. But Plaintiff must "allege facts that would permit [the court] plausibly to infer an agreement among the defendants, *motivated by some discriminatory animus, to deprive the plaintiff of [his] right[s]*." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (emphasis added). The fact that several outlets jointly interviewed a major party candidate is patently insufficient to support such an inference, and conclusory labels such as "syndicate" and "cartel" do not substitute for facts. *See id.* (affirming dismissal where complaint was "devoid of facts that would warrant … an inference" of an actionable conspiracy); *Schiff v. IRS*, 2026 WL 699650, at *1, *5 (D.P.R. Mar. 12, 2026) (dismissing Section 1985(3) claim against news publishers arising from their supposed "colluding" with sources to publish "unsubstantiated

information" for failure to adequately allege conspiracy). Holding otherwise would make all decisions about how to most effectively cover elections fraught with legal risk, creating a severe chill on political journalism.

*Third*, Plaintiff alleges no qualifying civil rights interference. He alleges interference with voters' rights by "force, intimidation, or threat," FAC ¶ 40, but the only conduct he identifies in support of this claim is *The Belmont Voice* purportedly "coordinat[ing]" to exclude him from the same level of press coverage given to a major party candidate. *Id.* ¶ 41. This does not identify any interference with *voters'* rights of advocacy or support at all, much less with the requisite "force, intimidation, or threat." 42 U.S.C. § 1985(3).

**F. Plaintiff Fails to State a Claim under Section 1983 (Count III)**

Plaintiff's Section 1983 claim fails for lack of state action. "Section 1983 furnishes a private right of action against any person who, while acting under color of state law, deprives another … of rights secured either by the Constitution or by federal law." *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543 (1st Cir. 2021). Where the challenged conduct "cannot be classified as state action, a 1983 claim necessarily fails." *Id.* And courts recognize that since "[n]ewsgathering is the quintessential private activity, jealously guarded from impermissible government influence," news outlets cannot be easily classified as state actors. *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1214 (9th Cir. 2002). This Court has already concluded that "Ayyadurai's § 1983 claim fails because the action he challenges is plainly that of private actors…" PI Order at 11.

Plaintiff attempts to avoid the state action requirement by invoking the "entwinement doctrine" articulated in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 297-304 (2001). Under this doctrine, "public entwinement in the *management* and *control* of a private entity can create a basis for state action, but the requisite entwinement exists

only when government actors manage or exercise control over a nominally private entity." *Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 248 (1st Cir. 2012) (internal quotations and citations omitted) (emphasis added). But as Plaintiff admits, Defendant Belmont News Foundation, Inc. is owned, operated, and managed by *private* Massachusetts citizens, who Plaintiff describes only as "white legacy figures" (FAC ¶ 29), rather than "state actors" as the law requires. Its tax-exempt status does not change the analysis: Receiving tax benefits or being regulated by the government does not convert a private entity into a state actor. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 812-16 (2019) (private nonprofit operating public access channels was not a state actor despite being heavily regulated). As this Court has already observed, Plaintiff's "bald assertion that Belmont News is a state actor because of 'public entwinement' . . . is supported by nothing more than labels and jargon that fall well short of establishing state action." PI Order at 11. Moreover, Plaintiff has not identified any federally protected right of which he was deprived, as no "provision of the Constitution or federal law would entitle him to the precise media coverage he desires on the precise timeline he desires." *Id.* at 11 n.6. In short, Plaintiff's Section 1983 claim fails as a matter of law because he does not and cannot allege state action.

### G. 28 U.S.C. § 1331 Does Not Provide Plaintiff with a Cause of Action (Count IV)

Plaintiff asserts a claim for "Substantial Embedded Federal Question Under 28 U.S.C. § 1331 (Grable Doctrine)," FAC ¶¶ 47-50 (Count IV), but this is a theory of jurisdiction, not a cause of action. Nor would Plaintiff prevail on his underlying federal question—"whether the term 'coverage' incorporated federal 501(c)(3) candidate neutrality mandates under 26 U.S.C. § 501(c)(3) and IRS Revenue Ruling 86-95 [prohibits] the publication of candidate profiles without equal presentation to all qualified candidates." *Id.* ¶ 50. There is no private right of action to sue

an entity over its tax-exempt status, nor does Plaintiff have standing to challenge that status arising from his concocted and unconstitutional "equal coverage" violation. *See Fulani v. Brady*, 935 F.2d 1324, 1329-30 (D.C. Cir. 1991) (holding that a third-party political candidate lacked standing to sue the IRS to challenge the tax-exempt status of the Commission for Presidential Debates based on its excluding her from a presidential debate it hosted, because her injury could not be traced to the IRS's granting of tax-exempt status to the Commission).

Moreover, Defendants did not violate Section 501(c)(3), which provides that covered entities cannot "participate in, or intervene in … any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3). By Plaintiff's own account, Defendants did not intervene on behalf of or against any particular candidate, but covered both major party candidates and invited Plaintiff to participate in coverage of independent candidates. FAC ¶¶ 21, 26 & Ex. F. This is entirely consistent with Section 501(c)(3)'s requirements.

In short, even if Plaintiff had standing to challenge *The Belmont Voice*'s tax-exempt status, which he does not, any such challenge would fail.

## II. THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS

In addition to suffering from incurable pleading deficiencies, Plaintiff's claims fail at the threshold because they are all premised upon *The Belmont Voice*'s editorial choices about when and how to cover an election. To allow liability to arise from these choices would intrude into "the exercise of editorial control and judgment," in violation of the First Amendment. *See* PI Order at 10 (quoting *Tornillo*, 418 U.S. at 258). This Court has already recognized as much, concluding that Plaintiff's Section 1985, Section 1983, and Chapter 93A claims are likely barred under *Tornillo* because they "attempt to impose content-based editorial obligations on a newspaper," and that they "are not saved by [*Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991)]" because they do not seek to enforce any promise. PI Order at 10-11, 14. Indeed, all of Plaintiff's claims are

barred by the First Amendment for the same reason, as he has not identified any contractual obligation, enforceable promise, or independent tortious conduct that could overcome *The Belmont Voice*'s clear First Amendment rights. Because each of his claims is instead rooted in the unconstitutional theory that Defendants are not entitled to otherwise lawfully exercise their editorial control and judgment to his detriment, they are all barred by the First Amendment.

## III. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION TO DISMISS THE ENTIRE ACTION WITH PREJUDICE

First Amendment considerations also support the Court exercising its discretion to retain supplemental jurisdiction over Plaintiff's state law claims in order to dismiss the FAC in its entirety. The Court has such discretion under 28 U.S.C. § 1367(a), and while it may decline to exercise supplemental jurisdiction once federal claims are dismissed, *id.* § 1367(c)(3), its decision ultimately turns on considerations of "judicial economy, convenience, fairness, and comity." *Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir. 2015). Here, these considerations favor resolving the state-law claims alongside the federal claims. Initially, this Court has already analyzed each of Plaintiff's state law claims and found that none is likely to succeed PI Order at 12-14; those claims present no novel or complex questions of state law, and there are no convenience or comity concerns weighing in favor of declining to rule on the state law claims.

Moreover, declining jurisdiction would serve only to let Plaintiff relitigate the same deficient claims in another forum, forcing Defendants—a small nonprofit newspaper, its editor, and its volunteer board chair—to bear the burden and expense of defending against them anew. Federal courts recognize the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). Rule 12(b)(6) serves this interest by "not only protect[ing] against the costs of meritless litigation, but provid[ing] assurance to those exercising

their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 264, 279 (S.D.N.Y. 2013). Resolving this matter completely without further state court proceedings would not only serve judicial economy and convenience concerns, but fundamental First Amendment concerns as well. Accordingly, Defendants ask the Court to retain supplemental jurisdiction and dismiss the FAC in full, with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the First Amended Complaint in its entirety and with prejudice.

Dated: November 12, 2026

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP

By: */s/ Rachel F. Strom*

Rachel F. Strom
Abigail B. Everdell (*Pro hac vice forthcoming)*
Leena M. Charlton (*Pro hac vice forthcoming)*
Celyra I. Myers (*Pro hac vice forthcoming)*
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 603-6455
RachelStrom@dwt.com
AbigailEverdell@dwt.com
LeenaCharlton@dwt.com
CelyraMyers@dwt.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the within document was filed through the CM/ECF system and served via email and via Overnight Mail to Plaintiff Dr. Shiva Ayyadurai at the below address:

Dr. Shiva Ayyadurai,
Plaintiff *Pro Se*
701 Concord Avenue
Cambridge, MA 02138
vashiva@cytosolve.com

Dated: November 12, 2026

/s/ *Rachel F. Strom*
Rachel F. Strom